OPINION
This is an appeal from an order modifying a prior decree allocating parental rights.
Jacob Bradley was born to Devi Faye Averill on August 4, 1991. The child's father is Thomas Christopher Bradley. On December 13, 1995, the Juvenile Court approved a shared parenting plan. The plan allocated the parental rights and responsibilities for Jacob primarily to his mother, Devi Faye Averill. Thomas Christopher Bradley was ordered to pay child support in an appropriate amount.
It appears from the record that an administrative proceeding was held in the fall of 1999 concerning the amount of child support that Mr. Bradley should be required to pay. An adjustment was recommended, increasing the amount of support. Mr. Bradley requested a mistake of fact hearing on October 27, 1999.
The record does not contain a motion for change of custody that Mr. Bradley also purportedly filed. In a related motion that he filed on April 14, 2000, asking the court to interview Jacob in-camera, Mr. Bradley stated the following as grounds for his custody motion:
 "The parties are involved in a pending Custody action. Plaintiff's living environment is a concern of the Defendant. Plaintiff is or has been involved with an individual who is known for dealing in drugs. Plaintiff has allowed this individual to hang around the house. The Plaintiff's daughter is involved in a gang. The child is having difficulty in school. Defendant is concerned about the well being and safety of the minor child with the Plaintiff."
The custody motion was referred to a magistrate, who took evidence. The magistrate entered a decision on January 26, 2001, granting Mr. Bradley's motion. In her findings of fact the magistrate stated, inter alia:
 "3. The child was interviewed in camera. He likes to visit his father and wants to live with his mother. He had some trouble in school with academics and minor discipline. He is generally making progress to completing his grade level this year. He could be doing better, but is not in apparent danger of failing this year.
* * *
 5. Mr. Bradley lives with his current wife in a rural setting near Troy, Ohio. He and his wife work. When Jacob has been in Mr. Bradley's care during the summer, he obtained a babysitter. Mr. Bradley has no other children. Jacob has things to do when at his father's but misses his neighborhood friends and family after sometimes. Mr. Bradley is concerned with Jacob's progress at school and with the school system he attends. The teacher stated Jacob could make good grades. Jacob has a nice room at the Bradley home.
 6. The psychologist found either parent as suitable and recommended the child remain in the mother's custody.
 7. Mr. Bradley's school district and influence could create a better academic environment for Jacob."
Ms. Averill filed objections to the magistrate's decision in which she argued that no change of circumstances had been shown. She also challenged the magistrate's findings that a change of custody would produce a better academic environment for Jacob.
The trial court overruled Ms. Averill's objections on June 8, 2001, stating, inter alia:
 Upon a review of the foregoing objections, including the record and transcripts the Court hereby OVERRULES the same. The Court recognizes the switch of legal custody to Mr. Bradley is in the best interests of the child. The Court determines the change of legal custody meets the three-part test of § 3109.04(E) of the Ohio Revised Code. The change of custody is justified because there is a change in circumstances, it is in the best interests of the child, and the advantages of the change outweigh the likely harm caused by the change.
 First, the petition for legal custody comes in response to the child's school situation. Mr. Bradley testified that one reason he wanted a change in custody is the issue of school. (Tr. 29). Since the shared parenting plan was formed, the child has experienced academic troubles in school. The child went to summer school after the second grade and was held back in the second grade because he was not emotionally or mature enough to continue through the third grade. (Tr. 41). Because of the child's difficulties in school the circumstances have changed since the shared parenting plan went into effect.
 Second, the grant of legal custody to Mr. Bradley will place the child in a better school system. As Mr. Bradley testified, the child will be placed in a better school and will have a better opportunity for life. (Tr. 22). Also, Mr. Bradley testified the child hated the school he attended and wanted to attend a different school, such as a school in Troy or Tipp City. (Tr. 44). By granting legal custody to Mr. Bradley, the child will attend a quality school that will give him an opportunity to get a better education. The Decision of switching custody to place the child in a better school system is in the best interests of the child.
 Third, the Decision of the Magistrate establishes quality and expansive parenting time between Ms. Averill and the child. The Magistrate's Decision ordered an amount of visitation that is comparable to the current time the child has with Ms. Averill. Thus, the Decision maintains the strong relationship between Ms. Averil and the child, while it gives the child a better opportunity for excelling in school. By doing so, the advantages of the switch in custody outweigh the possible harm caused by the change. The Court emphasizes the Decision of the Magistrate and the Order of this Court is not in response to the love and support shown by Ms. Averill to the child, but in response to the best interests of the child.
Ms. Averill filed a timely notice of appeal. She presents a single assignment of error, which states:
 THE TRIAL COURT COMMITTED ABUSE OF DISCRETION AND PREJUDICIAL ERROR AS THE DECISION IS MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE, THUS THEREBY ARBITRARY, UNREASONABLE, AND UNCONSCIONABLE.
Per Section 4(B) of Article IV of the Ohio Constitution, the jurisdiction of the courts of common pleas and their divisions is fixed by statute. See Mattone v. Argentina (1931), 123 Ohio St. 393 . R.C.2151.23(F)(1) provides that the juvenile court shall exercise its jurisdiction in child custody matters in accordance with R.C. 3109.04. That section authorizes domestic relations courts to allocate parental rights and responsibilities for the care of minor children.
Decrees allocating parental rights and responsibilities are final orders. Like any other final order, the doctrine of res judicata applies to merge any subsequent related grounds for relief into the decree and the relief granted. That rule ordinarily bars further claims for relief on those grounds, depriving the court that issued the order of jurisdiction to modify it. However, the General Assembly in the exercise of the power conferred on it by the Ohio Constitution has created an exception to the jurisdictional bar in R.C. 3109.04(E)(1). That section permits modification of a prior decree allocating parental rights upon certain predicate findings. Paragraph (1)(a) requires a finding that a change has occurred in the circumstances of the child or either of the parents. Upon that finding of changed circumstances, the same paragraph, as well as paragraph 2(C) dealing with shared parenting decrees, provides that the court may modify a prior custody order if it is in the child's best interest.
R.C. 3109.04(E)(1) does not identify the circumstances the court must consider. Obviously, they may include any of the particular circumstances identified in paragraph (F)(1)(a)-(j) of that section. However, the change must involve "facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree." R.C.3109.04(E)(1)(a). This implies more than changes which typically occur with the passage of time.
Any party who wishes to invoke the juvenile court's continuing jurisdiction to modify a prior decree allocating parental rights and responsibilities must do so pursuant to the applicable rules of procedure. Civ.R. 75(J), which by operation of R.C. 2151.23(F)(1) governs the juvenile court's continuing jurisdiction in those matters, states:
 The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6. When the continuing jurisdiction of the court is invoked pursuant to this division, the discovery procedures set forth in Civ.R. 26 to 37 shall apply.
Pursuant to Civ.R. 7(B), the motion must be in writing.
As was discussed above, the record contains no motion by Mr. Bradley invoking the court's continuing jurisdiction to modify its prior order allocating parental rights and responsibilities to Ms. Averill. The magistrate's decision states that a motion was filed on November 12, 1999, but none is reflected in the clerk's summary of docket and journal entries or contained in the record of the juvenile court we have been furnished. Therefore, the court's jurisdiction to grant the relief it ordered, allocating parental rights and responsibilities to Mr. Bradley, was not properly invoked.
It may be the case, and probably is, that the change of custody request arose in the course of the proceedings on the increase in child support that was administratively recommended. Even if it did, and even if a hearing on that recommendation is requested, a proper Civ.R. 75(J) motion must be filed before the court can also modify its prior decree allocating parental rights and responsibilities. However, there was no objection to the lack of a motion, and that failure waives the defect involved.
Though Mr. Bradley attempted to show that Jacob's living situation with his mother was potentially dangerous and unstable, the court appears to have rejected those claims and instead focused on Jacob's problems at school to find both (1) a sufficient change of circumstances and (2) that it is in Jacob's best interest to live with Mr. Bradley instead of Ms. Averill. Implicit in the court's decision is a finding that Jacob's school problems are such that "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child," which is a relevant predicate finding required by R.C. 3109.04(E)(1)(a)(iii).
The only evidence of school problems that Jacob experienced is the fact that he attended summer school after the second grade and that when he was then promoted to the third grade Jacob had problems with the greater demands imposed by the third grade and was returned to the second grade to repeat that school year. According to Jacob's teacher his problem was a lack of the maturity required to do third grade work. Her testimony was that he was doing very well in the second grade upon repeating it.
When a court allocates parental rights and responsibilities and when it modifies a prior allocation order the court must consider, inter alia, "[t]he child's adjustment to his home, school, and community." R.C.3109.04(F)(1)(d). Therefore, the trial court properly considered the evidence concerning Jacob's attending summer school and being returned from the third to the second grade. However, there is nothing so compelling in those facts as to constitute a change of circumstances,[1]
and nothing to suggest that transfer to another school where Mr. Bradley lives would resolve whatever problems in school Jacob experienced or produce the required advantages for Jacob that outweigh the harm involved. The paucity of the evidence in that regard is significant in at least two respects.
First, R.C. 3109.04(E)(1)(a) creates a presumption in favor of retaining the residential parent designated by the prior decree. The presumption may be overcome by evidence of a change of circumstances and that the change requested is in the child's best interest and will outweigh any harm resulting. The evidence presented concerning Jacob's schooling fails to overcome the presumption.
Second, R.C. 3109.04(F)(3) provides that "[w]hen allocating parental rights and responsibilities for the care of children, the court shall not give preference to a parent because of that parent's financial status or condition." Ms. Averill and Jacob live in public housing in Dayton and Jacob attends a Dayton public school. Mr. Bradley has remarried and lives in Troy, in Miami County. His home is large and attractive, and he enjoys an affluent life. Mr. Bradley opined that Jacob's school opportunities would be better in Troy, but there is no positive evidence of that. One can sympathize with Mr. Bradley's desire to share the advantages of his new life with his son. However, on this record the choice that was made gave preference to Mr. Bradley largely because of his superior financial status or condition, which R.C. 3109.04(F)(3) prohibits.
R.C. 3109.04(E) is unique in that it permits a court to modify a prior final order by providing for continuing jurisdiction of child custody matters. Nevertheless, the requirements of that section concerning change of circumstances reflect a policy choice on the part of the General Assembly that favors stability in the child's life. Even where there may be some advantages available to a child by residing with the other parent, that need for stability must be respected because it is an essential element in nurturing a child. That applies even where, as here, the person seeking a custody change is a loving and responsible parent.
The "continuing jurisdiction" created by R.C. 3109.04(E)(1) appears, at least in some cases, to have caused litigants to view final orders allocating parental rights and responsibilities as subject to easy revision as the child's life develops. We believe that view is mistaken. It is at odds with the principle of finality that attaches to all final orders, even those that may be modified. It perpetuates instability into the child's life. It promotes antagonisms between the child's parents. And, it treats the court as a kind of supernumerary third parent that is available to resolve disputes which the parties should resolve themselves. All of those prospects are negative. Therefore, the courts should insist on a change of circumstances that is significant in its nature before considering a requested modification.
The assignment of error is sustained. The judgment of the trial court is reversed and vacated.
WOLFF, P.J. and FAIN, J., concur.
[1] Jacob was not enrolled in school when the prior order was entered, so anything pertaining to his school is arguably a change of circumstances. To satisfy R.C. 3105.04(E), however, the change should be substantial and unexpected. Holding a child of Jacob's age back one grade may not be either. Indeed, it often has a positive effect.